UNITED STATES of America, Plaintiff,

v.

**594,464 POUNDS OF SALMON, MORE OR LESS, Defendants.**

No. C86–666TB.

United States District Court,
W.D. Washington,
at Tacoma.

March 6, 1987.

Robert A. Taylor, Staff Atty., NOAA, Office of General Counsel, Washington, D.C., for plaintiff.

Joseph D. Weinstein, Hall Baetz, Davis, Wright & Jones, Seattle, Wash., for defendants.

## ORDER DENYING MOTIONS TO DISMISS, AND RULINGS ON MATTERS OF FOREIGN LAW

BRYAN, District Judge.

THE COURT has considered the filings and arguments of the parties and now concludes:

### PROCEDURAL BACKGROUND

This is an *in rem* forfeiture proceeding brought by the United States under the Lacey Act Amendments of 1981, 16 U.S.C. § 3371 *et seq.* (Lacey Act). The United States alleges that the salmon that are the subject of these proceedings were unlawfully imported into the United States in violation of 16 U.S.C. § 3372(a)(2)(A) after having been transported in violation of foreign law. The United States alleges that the fish had been exported from Taiwan in violation of Taiwanese law prohibiting the export of salmon without a permit.

After filing its claim to the seized salmon, claimant filed a motion to dismiss the action, arguing that the United States based its forfeiture claim upon an alleged violation of Taiwanese export regulations, and that 16 U.S.C. § 3372(a)(2)(A) does not apply to violations of foreign regulations. Treating claimant's motion in accordance with Fed.R.Civ.P. 12(b) as one for summary judgment, the Court denied the motion, holding that claimant was not entitled to judgment on this issue as a matter of law. Claimant then filed a motion for reconsideration of the Court's decision, which the Court also denied. In ruling on the reconsideration motion, the Court supplemented its previous order by explaining that the Court was not prepared to rule on whether the Taiwan regulatory measures constituted "foreign law" under the terms of the Lacey Act until the Court had before it a more complete picture of the Taiwanese legal and regulatory system.

Thereafter a hearing was scheduled for determining the content and meaning of applicable Taiwanese law pursuant to Fed. R.Civ.P. 44.1. Prior to the hearing, claimant filed an alternative motion to dismiss, arguing that if the Lacey Act were interpreted to apply to foreign regulations, the Act would be rendered void for vagueness. Claimant also attached the underlying Taiwanese law as being void for vagueness. In the subsequent hearing, counsel for the parties addressed the issues of foreign law as well as the interpretation of the Lacey Act and whether the Act and the underlying law were unconstitutionally vague.

### DISCUSSION

1. *Content and Meaning of Taiwan Law.*

The United States has the burden of proving that the Taiwanese announcement, referred to below, is "foreign law" for purposes of the Lacey Act. The United States has met its burden.

The United States submitted the affidavit of Mr. T.Y. Lu, Department Director of the Board of Foreign Trade. The United States also offered translations of certain provisions of Taiwanese law referred to in

Mr. Lu's affidavit. Claimant submitted three affidavits of Taiwanese lawyer Roger Ruey–Fuh Lin and an excerpt from a text to Taiwanese trade law. Consideration of these materials was appropriate under Fed. R.Civ.P. 44.1.

The parties are largely in agreement as to the content and meaning of the relevant Taiwanese law. The evidence presented shows that the Taiwanese legal system is composed of five branches, or "Yuans," among which are the Legislative Yuan and the Executive Yuan. The Executive Yuan include the ministries such as the Ministry of Economic Affairs, a subsidiary organ of which is the Board of Foreign Trade. The Board of Foreign Trade is authorized by law to regulate matters of international trade, and has adopted regulations regarding the export of commodities from Taiwan. Those regulations provide for three categories of exports, "permitted," "controlled," and "prohibited." By the terms of Article 4 of Board of Foreign Trade regulations, roughly translated as "Regulations Governing the Scrutiny of Export of Commodities," the export of items designated as "controlled" exports is prohibited without a permit from the Board of Foreign Trade. Violations may result in an exporter having his license suspended or revoked. On September 30, 1983, the Board of Foreign Trade issued public announcement No. Mou (72) Huo Fa 26507, which designated salmon and salmon products—including whole frozen salmon such as are at issue here—as controlled exports.

Claimant argues that the announcement and the regulations do not prohibit the export of salmon from Taiwan since export would be permitted if the necessary permit were obtained from the Board of Foreign Trade. However, Mr. T.Y. Lu stated that no permits to export salmon have been issued since salmon were designated as controlled exports. Claimant has not offered any evidence to contradict this statement. Whether or not salmon might at some point legally be exported from Taiwan if a permit were issued, no export permits have been issued.

In fact, the government has submitted a letter from Frederick F. Chien of the Coordination Council for North American Affairs, in which Mr. Chien indicates one export company's license was revoked when "it was found to have illegally exported salmon products to Hong Kong under the false name of squid products." Accordingly, the Court concludes that the export of salmon from Taiwan since September 30, 1983, would constitute a violation of Taiwanese law.

2. *Application of the Lacey Act.*

Having now a clearer picture of the Taiwanese legal system, the Court returns to the issue claimant earlier raised on its motion to dismiss regarding the application of the Lacey Act. Claimant's arguments were based upon the phrasing of 16 U.S.C. § 3372(a)(2)(A), which states:

It is unlawful for any person—

.    .    .    .    .

(2) to import, export, transport, sell, receive, acquire or purchase in interstate of foreign commerce—(A) any fish or wildlife taken, possessed, transported or sold in violation of any law or regulation of any State or in violation of *any foreign law,....*

(Emphasis added.) Claimant points to the use of the phrase "any foreign law" in the same subsection as "any law or regulation of any State," and argues that rules of statutory construction require reading "any foreign law" to include only foreign statutes and not foreign regulations. The United States does not dispute that the relevant provisions of Taiwan law consist in part of regulations. The United States counters, however, the reading of the Lacey Act that claimant urges would improperly restrict the coverage of the Act and would be contrary to the congressional intent to make the Lacey Act more effective.

The rules of statutory construction claimant cites are only to be applied where the terms of the statute being interpreted are ambiguous. It appears to the Court, however, that the term at issue here—the word "law" in the phrase "foreign law"—is not ambiguous. That term is commonly used

and generally understood to have a broad meaning, including matters such as regulations. For example, *Blacks Law Dictionary*, (Fifth Ed. 1979) defines "law" in part as:

> Law, in its generic sense, is a body of rules of action or conduct prescribed by controlling authority, and having binding legal force.... That which must be obeyed and followed by citizens subject to sanctions or legal consequences is a law.

(Citation omitted.) It is clear that the Lacey Act applies to the identified Taiwanese export restrictions.[1] The Board of Foreign Trade's regulations and public announcement prohibit the export of salmon from Taiwan without a permit. These measures constitute rules of conduct prescribed by controlling authority and which must be obeyed and followed by persons subject to them. The Taiwanese regulations amount to rules of law and therefore foreign law within the meaning of 16 U.S.C. § 3372(a)(2)(A). The reading of the Lacey Act also comports better with the congressional intent behind the Act than claimant's interpretation. Giving the phrase "foreign law" its ordinary meaning, including foreign regulations, is more in keeping with the broad purposes of the Act to prohibit trade in illegal fish and wildlife.

3. *Constitutional Challenges to Lacey Act.*

In its alternative motion to dismiss, claimant argues that the Lacey Act, if applicable to the Taiwanese announcement, is unconstitutionally vague for three reasons. First, the Act purportedly failed to give fair warning that it would apply to both foreign laws and foreign regulations. Second, the announcement itself did not give fair warning that salmon exports were prohibited. Finally, the lack of standards regulating the discretion of the Taiwanese officials allegedly permits arbitrary and erratic enforcement.

■ The Court rejects claimant's argument. The constitutional prohibition of

vagueness is based upon a standard of reasonableness. Section 3372(a)(2)(A), read reasonably, clearly comprehends violation of foreign regulations, and prohibits the importation of salmon transported in violation of those regulations. The Act is neither vague nor ambiguous. Nor are the Taiwanese export restrictions themselves vague. The terms of the Taiwan law are precise and unambiguous, and plainly require a permit to export salmon from Taiwan. The law puts everyone who would comply with it on notice that exports without a permit are prohibited. The discretion the law affords the Taiwanese officials is immaterial. It is sufficient for purposes of the Lacey Act that the law provides clear guidance to the United States officers charged with enforcing the Lacey Act as applied to the Taiwanese law.

## CONCLUSION

The regulations and public announcement of the Taiwan Board of Foreign Trade restricting the export of salmon from Taiwan constituted "foreign law" as that term is used in the Lacey Act at 16 U.S.C. § 3372(a)(2)(A). Taiwanese law makes salmon a controlled export, and prohibits the export of salmon from Taiwan without a permit issued by the Board of Foreign Trade. Sanctions for violation of this regulation may result in suspension or revocation of exporter's licenses. The Board of Foreign Trade has issued no permits for the export of salmon. Consequently, the exportation of salmon from Taiwan would constitute the transportation of fish in violation of foreign law, as referred to in 16 U.S.D. § 3372(a)(2)(A). Further, the provisions of the Lacey Act, and of the Taiwanese law to which it is applied, are not unconstitutionally vague.

ORDERED that claimant's Motions to Dismiss are hereby DENIED.

---

1. Although claimant has not raised the issue, the United States points out that, even though the United States does not diplomatically recognize the Republic of China, pursuant to the Taiwan

Relations Act, 22 U.S.C. §§ 3301–3316, United States law applies to Taiwan in the same fashion as it applies to other nations.